■    In the Matter of FREDERIC J. FEINGOLD, Petitioner, v. JAMES G. LYNCH et al., Constituting the Board of Education of the Brentwood Public Schools, Union Free School District No. 12, Brentwood, Respondents.— Proceeding pursuant to article 78 of the CPLR (1) to annul a determination of the respondent Brentwood Board of Education, dated May 20, 1967, which dismissed petitioner from his position as a teacher of Union Free School District No. 12, Brentwood, (2) to direct petitioner's reinstatement to said position and (3) for related relief. Petition dismissed on the merits and determination confirmed, without

costs. In September, 1962, petitioner was appointed by the Brentwood Board as a schoolteacher for a probationary period of three years. He was then possessed of a State provisional certificate which mandated his completion of a certain course of study. In September, 1965, the Brentwood Board granted him tenure, despite the fact that he had not completed the course of study required by the State Education Department. There was correspondence among all parties concerning the matter and concerning petitioner's status. Finally, on January 23, 1967, the Teacher Certification Section of the State Department of Education advised that petitioner's State teacher's certificate had been voided. The Brentwood Board was advised to terminate petitioner's services by February 1, 1967 because the voiding of his State certification rendered him legally incompetent to teach in the public schools of the State. Ultimately, charges were served and a hearing was held, after which the board formally dismissed petitioner from his position. That a hearing on charges was held immediately distinguishes the present case from *Matter of Mannix* v. *Board of Educ.* (21 N Y 2d 455) and *Matter of Kobylski* v. *Agone* (37 Misc 2d 255, affd. 19 A D 2d 761). In both those cases it was held that a teacher with tenure must be afforded a hearing on stated charges before he may be dismissed. That was done in the instant case and the sole question left for our review is whether there was substantial evidence to support the Brentwood Board's determination. It is necessary to appreciate that *Mannix* and *Kobylski* (*supra*) and *Matter of Glass* v. *Board of Educ.* (16 N Y 2d 982) recognize that the lack of a teaching license, shown after a proper hearing and charges, may constitute incompetence sufficient for removal and dismissal. The evidence in this case is that petitioner lacked a teaching license; he thus lacks one of the professional prerequisites to teach in this State (Education Law, § 3001; *Matter of Mannix* v. *Board of Educ., supra*; *Matter of Glass* v. *Board of Educ., supra*). Once he was accorded his rights, under tenure, to a hearing, it would be anomalous and illegal for the board not to remove him in accordance with the clear statutory mandate. We further believe that the other charges, of insubordination, neglect of duty and conduct unbecoming a teacher, were sufficiently proved. Petitioner was afforded all his substantive and procedural rights and he was properly removed. Christ, Acting P. J., Rabin, Hopkins and Munder, JJ., concur; Martuscello, J., dissents and votes to annul the determination and remit the matter to respondents for further proceedings not inconsistent with the views expressed in the following memorandum: At the time of his appointment in 1962 and at the time tenure was conferred in 1965, petitioner possessed a "common branch" provisional teaching certificate issued by the Commissioner of Education of the State of New York. The certificate was effective for a period of five years from the date of its issuance, "provided (1) the holder * * * remains enrolled in a graduate program approved for preparation in the field of teaching for which the candidate is certified, (2) completes not less than six semester hours of approved and appropriate study during each year for the permanent certificate, and (3) maintains a record of satisfactory teaching experience." (Cf. Education Law, § 3006, subd. 3, which authorizes the Commissioner to issue "temporary license[s] limited to a school district, supervisory district or city *for a period not to exceed one year*" [emphasis added].) Admittedly, petitioner failed to comply with these requirements. The issue thus posed is whether petitioner's failure to comply with the conditions attached to his provisional certificate provides a sufficient basis upon which to predicate his dismissal. I think not (Education Law, § 3012; *Matter of Mannix* v. *Board of Educ.*, 21 N Y 2d 455; *Matter of Kobylski* v. *Agone,* 37 Misc 2d 255, affd. 19 A D 2d 761). Contrary to the view expressed by the majority, it seems to me that the holding in *Mannix* (*supra*) is not merely that

a teacher in petitioner's position is entitled to a hearing solely to determine whether he has complied with the conditions under which his provisional certificate was issued. After discussing the holding in *Kobylski (supra)*, the Court of Appeals in *Mannix* (21 N Y 2d 455, 460–461) went on to discuss the effect of its affirmance in *Matter of Glass* v. *Board of Educ.* (16 N Y 2d 982, affg. 21 A D 2d 891) as follows: "Rather similar to the present case is *Matter of Glass* v. *Board of Educ.* [Citation.] * * * The Appellate Division held squarely that 'A teacher with tenure may not be summarily dismissed without a hearing on charges' (21 A D 2d 891, 892). This court affirmed. It added this comment in its memorandum of affirmance: 'Petitioner is entitled to a hearing under section 2573 of the Education Law solely to determine whether she has the requirements for eligibility and tenure. The teaching license is, of course, a professional prerequisite to the holding of a permanent position' (p. 983). The present case requires some evaluation of the scope and effect of these additional words in the memorandum. The court could not have meant that petitioner was entitled to a hearing on whether or not she had met the preconditions of her permanent appointment. The papers in that article 78 proceeding did not show that she had met them or that she contended she had met them. * * * *This court was affirming the order which reinstated petitioner to permanent status as a teacher; and the 'hearing' which the statute afforded her was 'for cause' and was one addressed to good behavior and efficient and competent service."* (Emphasis added.) The thrust of *Mannix,* then, is that a teacher must have a valid certificate *at the time of appointment* in order to obtain tenure and that once tenure is obtained the teacher may not be discharged for his failure to meet additional qualifying conditions that extend beyond the probationary period, unless it be shown, after charges and a hearing, that such failure adversely affected his competency to teach, that is, the *quality* of his teaching. Were the Commissioner to be permitted to impose qualifying conditions that survive the statutory probationary period, "tenure rights would become quite illusory" (*Matter of Mannix* v. *Board of Educ., supra,* p. 459). In the case at bar, there is absolutely no evidence that petitioner's teaching performance was unsatisfactory. In fact, at the hearing, both the Administrative Assistant and the Principal testified that his teaching performance was satisfactory in all respects. Moreover, the charges herein reveal that petitioner was not even charged with incompetence insofar as his teaching performance was concerned, but with "legal" incompetence in that his certificate had been voided. Since the conditions attached to petitioner's certificate extended beyond the three-year probationary period, they were inconsistent with and violative of the tenure statute. It follows that petitioner's failure to comply with such conditions cannot be deemed either insubordination or neglect of duty. There remains but one other charge that warrants consideration, namely, that of conduct unbecoming a teacher. The record discloses that at some time prior to being granted tenure petitioner obtained waivers or extensions of time within which to complete the required courses. It does not appear, however, exactly when or under what circumstances these extensions were obtained, or precisely what representations, if any, petitioner made in order to obtain them. It does appear that he executed a letter of intention at some time *after* he acquired tenure. There is also testimony to the effect that he was pursuing a course of study (other than that prescribed by his provisional certificate) which he believed would satisfy the Commissioner's regulations and ultimately lead to permanent certification. In this State, the record is insufficient to support respondents' finding that petitioner "was guilty of conduct unbecoming a teacher, in deceiving his superiors by leading them to believe, by written and oral representations, that he was complying,

and intended to comply with the requirements of the \* \* \* Department of Education ". Had petitioner expressed an intention not to complete the required courses prior to the time he acquired tenure, I think it fair to assume that he would not have been recommended for tenure. Thus, if he obtained extensions by means of fraudulent misrepresentations with respect to his intentions of ultimately completing the required courses and succeeded thereby in obtaining tenure, such conduct would, in my opinion, constitute conduct unbecoming a teacher and be a sufficient basis upon which to predicate his dismissal (Education Law, § 3012). This area was afforded little attention at the hearing for the apparent reason that respondents proceeded upon the mistaken theory that the voiding of petitioner's certificate was sufficient in and of itself to warrant his dismissal. Under the circumstances, the interests of justice require that the matter be remitted to respondents for a further hearing on the charge of conduct unbecoming a teacher. In passing, I note that, to some extent, I share Judge Keating's concern in *Mannix* (21 N Y 2d 455, 462) about the fairness, soundness and propriety of permitting a teacher who has secured his appointment pursuant to a provisional certificate to feign compliance therewith until such time as the statutory probationary period has run and thereafter to refuse, with impunity, to comply with the conditions attached to his certification. Nevertheless, the majority of the Court of Appeals in *Mannix* determined the policy of the tenure statutes, in their present form, to be paramount to such considerations.